# UNITED STATES NAVY-MARINE CORPS
# COURT OF CRIMINAL APPEALS
# WASHINGTON, D.C.

**Before**
**F.D. MITCHELL, J.A. FISCHER, M.K. JAMISON**
**Appellate Military Judges**

**UNITED STATES OF AMERICA**

**v.**

**TYLER R. CIESLEWICZ**
**SECOND LIEUTENANT (O-1), U.S. MARINE CORPS**

**NMCCA 201300421**
**GENERAL COURT-MARTIAL**

**Sentence Adjudged:** 7 August 2013.
**Military Judge:** Col Daniel Daugherty, USMC.
**Convening Authority:** Commanding General, Training Command, Quantico, VA.
**Staff Judge Advocate's Recommendation:** LtCol M.E. Sayegh, USMC.
**For Appellant:** CDR Michael C. Pallesen, JAGC, USN.
**For Appellee:** Capt Suzanne M. Dempsey, USMC.

**26 June 2014**

---
## OPINION OF THE COURT
---

**THIS OPINION DOES NOT SERVE AS BINDING PRECEDENT, BUT MAY BE CITED AS PERSUASIVE AUTHORITY UNDER NMCCA RULE OF PRACTICE AND PROCEDURE 18.2.**

PER CURIAM:

A military judge sitting as a general court-martial convicted the appellant, pursuant to his pleas, of two specifications of disrespect toward a superior commissioned officer, drunk on duty, conduct unbecoming an officer and a gentleman, drunk and disorderly conduct, and wrongful communication of a threat, in violation of Articles 89, 112, 133, and 134, Uniform Code of Military Justice, 10 U.S.C.

§§ 889, 912, 933, and 934. The military judge sentenced the appellant to a reprimand, confinement for 220 days, forfeiture of all pay and allowances, and a dismissal.[1] With the exception of the reprimand and confinement in excess of 84 days, the convening authority (CA) approved the sentence as adjudged.

In the appellant's sole assignment of error, he contends that the approved sentence is inappropriately severe. After carefully considering the record of trial and the submissions of the parties, we are convinced that the findings and sentence are correct in law and fact, and that no error materially prejudicial to the substantial rights of the appellant occurred. Arts. 59(a) and 66(c), UCMJ.

## Factual Background

The appellant reported to The Basic School (TBS) on 5 November 2012 and was assigned to Company A, Basic Officer Course 1-13. Within approximately a week of his arrival, the appellant checked into a local hotel for a period of four days. He caused substantial damage to his assigned room and was charged with a misdemeanor violation in civilian court. Because alcohol served as a reason for the appellant having destroyed hotel property in the amount of more than $500.00, the appellant's command directed the appellant to attend the 30-day Inpatient Alcohol Treatment Program at Fort Belvoir. The appellant was dropped from Company A and assigned to Company M.

Following his completion of the in-patient alcohol treatment program on 27 December 2013, the appellant relapsed on 13 January 2013 and was readmitted to in-patient alcohol treatment. The appellant completed treatment and was released on 31 January 2013.

On 12 February 2013, the appellant was drunk on duty and underwent a fitness for duty test. Based on his level of intoxication, medical personnel determined that the appellant was not competent to perform duties. On 2 March 2013, he was arrested by the Stafford County Sheriff's Office for public intoxication. Released from jail on 3 March 2013 at approximately 1700, the appellant failed to report for duty the next morning.

---

[1] Following the announcement of sentence, the military judge recommended that the convening authority suspend the dismissal and all confinement in excess of time served. Record at 79.

2

Based on his three separate alcohol-related incidents, charges were preferred against the appellant on 12 March 2013. The appellant negotiated a pretrial agreement to resolve his charges at nonjudicial punishment (NJP). On 26 March 2013, the Commanding Officer, The Basic School, imposed NJP on the appellant. Following imposition of NJP, the appellant was once again assigned to in-patient treatment at Fort Belvoir.

The appellant was released from in-patient alcohol treatment on 23 April 2013. He returned to TBS to complete his out-processing and final physical prior to going on leave awaiting separation from the Marine Corps.

On 15 May 2013, the appellant agreed to stand duty as the Junior Officer of the Day (JOOD) from 1200 until 1700. Prior to assuming JOOD duty, he drank vodka to alleviate his hangover from the day before and continued to drink while on duty. At approximately 1245, the Executive Officer, TBS, noticed that the appellant was intoxicated. The appellant's company commander escorted the appellant to the company office and the appellant became combative and argumentative. The Quantico Provost Marshall's Office (PMO), Marine Corps Base Quantico, was contacted and Officer GY apprehended the appellant and transported him to PMO headquarters. During his transportation, the appellant offered Officer GY money in exchange for allowing him to escape into the woods. His offer rebuffed, the appellant arrived at PMO headquarters and while there, the appellant refused Officer GY's request to remain seated and walked towards the exit prompting Officer GY to chase down and subdue the appellant. After approximately two hours of processing, Officer GY transported the appellant to the Rappahannock Regional Jail to begin pretrial confinement. The appellant's company commander accompanied Officer GY. While in the car, the appellant was disrespectful to his company commander and later threatened to kill him. The appellant's company executive officer arrived at the Rappahannock Regional Jail and when the appellant saw him, he became disrespectful and unleashed a torrent of invective.[2]

---

[2] When the appellant saw Capt DJ, his executive officer, the appellant said: "Captain [DJ], you f***** me. You f***** me, Captain [DJ]. Does this make you feel good? Do you feel like a man? I bet you got that paperwork correct. They won't let me be a Marine officer, but they let someone like Captain [DJ] be one." PE 3 at 6.

3

**Sentence Appropriateness**

In accordance with Article 66(c), UCMJ, a military appellate court "may affirm only such findings of guilty and the sentence or such part or amount of the sentence as it finds correct in law and fact and determines, on the basis of the entire record, should be approved." This court reviews the appropriateness of the sentence *de novo*. *United States v. Baier*, 60 M.J. 382, 384 (C.A.A.F. 2005). "Sentence appropriateness involves the judicial function of assuring that justice is done and that the accused gets the punishment he deserves." *United States v. Healy*, 26 M.J. 394, 395 (C.M.A. 1988). This requires "'individualized consideration' of the particular accused 'on the basis of the nature and seriousness of the offense and the character of the offender.'" *United States v. Snelling*, 14 M.J. 267, 268 (C.M.A. 1982) (quoting *United States v. Mamaluy*, 27 C.M.R. 176, 180-81 (C.M.A. 1959)).

After review of the entire record, we find that the sentence is appropriate for this offender and his offenses. *Baier*, 60 M.J. at 384-85; *Healy*, 26 M.J. at 395-96; *Snelling*, 14 M.J. at 268. In addition to considering the nature and the seriousness of the specific offenses committed by the appellant, we have carefully considered the individual characteristics of the appellant, his prior record, and his diagnosis of alcohol dependency. Considering the entire record, we conclude that justice is done and that the appellant receives the punishment he deserves by affirming the sentence as approved by the CA. Granting sentence relief at this point would be to engage in dispensing clemency -- a prerogative uniquely reserved for the CA -- and we decline to do so. *Healy*, 26 M.J. at 395-96.

**Conclusion**

The findings and the sentence as approved by the convening authority are affirmed.

For the Court

R.H. TROIDL
Clerk of Court

4